IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAJOR O. HARDEN,       :
    Plaintiff,          :
                      :
   v.               :      CIVIL ACTION NO. 25-CV-4976
                      :
C.O. NEAL, *et al.*,       :
    Defendants.       :

## MEMORANDUM

WEILHEIMER, J.                     October 6 , 2025

      Plaintiff Major O. Harden, who is currently incarcerated at SCI Smithfield, brings this *pro se* action alleging violations of his constitutional rights. Harden seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Harden *in forma pauperis* status and will permit him to proceed on his conditions-of-confinement claim against Corrections Officer Heard involving an alleged denial of drinking water. The balance of Harden's Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Harden will be given an opportunity to proceed on the claim that passes statutory screening, or to file an amended complaint.

## I.    FACTUAL ALLEGATIONS[1]

      Harden alleges that his rights were violated while he was housed at the Pennsylvania Industrial Corrections Center ("PICC").[2] (Compl. at 1.) Named as Defendants are: Corrections Officers Neal, Heard, and Poole, identified as guards on the K-Unit; Corrections Officer Greene,

---

[1] The factual allegations are taken from Harden's Complaint. The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

[2] It appears that Harden was a pretrial detainee at that time. *See Commonwealth v. Harden*, MC-51-CR-0014882-2024; *Commonwealth v. Harden*, CP-51-CR-0000887-2025 (C.P. Phila); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (the Court may take judicial notice of facts reflected in publicly available state court records).

identified as the Grievance Officer at PICC; John Doe #1, identified as the Commissioner of the Philadelphia Prison System; Jane Doe #1, identified as the Warden of PICC; John Doe #2 and Jane Doe #2, identified as guards at PICC; and John Doe #3 and Jane Doe #3, identified as "a designated medical provider, i.e., doctor/nurse" at PICC. (*Id.* at 2-3.) Each is sued in his or her individual and official capacity. (*Id.* at 1.)

Harden alleges as follows: At approximately 5:00 p.m. on August 30, 2024, he was assigned to a cell on K-Unit at PICC. (*Id.* at 2.) He discovered that the sink in the cell was not functioning because the spigot did not work and the basin was filled with "a foul-smelling, lurid-looking liquid." (*Id.*) He later learned that sewage had backed up into the sink. (*Id.* at 2-3.) Harden informed C.O. Neal about the inoperable sink and requested a move to another cell because he was concerned that he would be unable to get a drink or to wash his hands. (*Id.* at 3.) Harden contends that C.O. Neal was "indifferent to [his] entreaties" but indicated that she would request a plumber. (*Id.*) He "did not hold out any great hopes that a plumber would be soon to arrive, as it was after 5 p.m. on a Friday." (*Id.*) Harden followed up with C.O. Neal before she left for the night[3] but Neal "supposedly 'forgot' to call a plumber and continued to refuse to relocate him to another cell." (*Id.*)

According to Harden, the next shift of Corrections Officers arrived at 6:00 p.m. and he spoke with C.O. Heard to alert her to the problem, once again asking to be relocated to another cell. (*Id.*) He alleges that C.O. Heard also was indifferent to his plight and refused to allow him out of his cell to use the water fountain and refused to permit someone else to retrieve a drink of

---

[3] Harden alleges that the Corrections Officers "were doing twelve (12) hour shifts at the time, from six to six." (Compl. at 3 n.1.) Thus, the Court understands Harden to allege that he first notified C.O. Neal about the problem with his sink at most one hour prior to the end of her shift.

water for him. (*Id.*) Harden followed up with Heard and claims that she threatened him by saying that "if he continued to complain about the cell, she would make sure he stayed in there until he got thirsty enough to drink from the toilet bowl." (*Id.*)

Harden alleges that he remained "locked-down in the cell without water for more than twenty-four (24) hours; during which time, he grew more and more thirsty. His mouth grew dry, he became nauseous and dizzy, his skin became clammy to the touch, and he developed a very bad headache." (*Id.*) He claims that on Saturday evening, after he alerted "every guard on duty since becoming aware of the issue with the sink," he was allowed out of his cell and was able to get a drink of water from the water fountain on the unit. (*Id.* at 3-4.) However, Harden passed out, landed on his face, and shattered five front teeth, punctured and lacerated his lips, broke his nose, and suffered injuries to his head and neck. (*Id.* at 4.) Harden was taken by ambulance to the hospital where he was told that the fall was due to severe dehydration. (*Id.*)

Upon discharge from the hospital, Harden was prescribed a pain management protocol and a soft-food diet. (*Id.*) He asserts that, upon his return to PICC, he was placed in the same cell with the inoperable sink and was denied medical treatment. (*Id.*) Harden alleges that he was given only "basic analgesics" for his pain even though the severity of his injuries required more substantial medication, and he was not given the soft-food diet and, therefore, was unable to eat for more than a week. (*Id.*) He suffered pain and lost weight despite his "repeated, near constant entreaties to the guards and medical staff" for medical care. (*Id.*) Harden contends that he continues to suffer pain from his injuries. (*Id.*) Based on these allegations, Harden seeks declaratory relief and monetary damages.[4]

---

[4] Declaratory judgments are unavailable to litigants who seek a proclamation that their rights were violated in the past, as Harden requests here. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate

## II.    STANDARD OF REVIEW

The Court will grant Harden leave to proceed *in forma pauperis* because it appears that

he is incapable of paying the fees to commence this civil action.[5]  Accordingly, 28 U.S.C. §

1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state

a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the

same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),

*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage

of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all

reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts

sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir.

2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d

Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Harden is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v.

Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the

---

past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see
also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*)
("Declaratory judgments are meant to define the legal rights and obligations of the parties in the
anticipation of some future conduct.").  Accordingly, declaratory relief is not available here.  The
Court addresses Harden's remaining claims for damages below.

[5] Because Harden is a prisoner, he will be obligated to pay the filing fee in installments in
accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Harden alleges that his Fourteenth Amendment due process rights were violated due to the conditions of his confinement and deliberate indifference to his serious medical needs. He also alleges violations of his First Amendment rights. The Court will address each of Harden's claims in turn below.[6]

---

[6] In the list of "Legal Claims" in the Complaint, without factual support, Harden claims that he was denied the ability to pray and worship. (*See* Compl. at 5, ¶ 37.) He alleges that "various corrections defendants – including Neal, Heard, Poole, etc." violated his First Amendment right to practice his religion, as well as his rights under the Religious Land Use and Institutionalize Persons Ac, 42 U.S.C. § 2000cc et seq. ("RLUIPA"). (*Id.*) Harden represents that as a devout Muslim, he is required to "undergo ablutions before prayer," and "is forbidden to offer his obligatory daily prayers in close proximity to human waste and other filth." (*Id.*) He provides no other factual context for these assertions and concludes that he was denied his ability to pray and worship. (*Id.*)

Harden has not alleged any facts explaining how his alleged inability to undergo ablutions before prayer or offering his prayers "in close proximity to human waste and other filth" violated his rights. Further, Harden has not sufficiently alleged the personal involvement of any named Defendant in the alleged violations. Thus, his assertion that he has been prevented from exercising his religion is wholly conclusory. "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). "A complaint that pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up); *see also Schuylkill Energy Res., Inc. v.*

A.      **Conditions-of-Confinement Claims**

Harden asserts that the conditions of his confinement at PICC violated his constitutional

rights because he was deprived of water for drinking and washing. (*See* Compl. at 4-5.)  Because

it appears that Harden was a pretrial detainee at the time of the events in question, the Fourteenth

Amendment governs his conditions-of-confinement claims. *See Hubbard v. Taylor*, 399 F.3d

150, 165-66 (3d Cir. 2005).  Prison officials have a constitutional duty to provide humane

conditions of confinement, including adequate food, clothing, shelter, and medical care, and

must take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*,

511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted).  To establish a basis for a

Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of

confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Camps v. Giorla*,

843 F. App' x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the

conditions complained of were imposed for the purpose of punishment or whether it is merely

incidental to a legitimate governmental objective.").  "Unconstitutional punishment typically

includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d

Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was

sufficiently serious and the subjective component asks whether the officials acted with a

sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).  To satisfy

the subjective component of the analysis, a prisoner generally must assert that prison officials

---

*Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (the Court is not required "to
accept as true unsupported conclusions and unwarranted inferences.").  Accordingly, any claim
based on Harden's inability to exercise his religion is undeveloped and will be dismissed. *See,
e.g., Peele v. Klemm*, 663 F. App'x 127, 130 (3d Cir. 2016) (*per curiam*) (upholding dismissal of
First Amendment free exercise claim where "Peele failed to provide any factual support for his
First Amendment claims beyond general conclusory allegations that DC–819 was inimical to his
and possibly other inmates First Amendment rights").

acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837).

Harden claims that Defendants Neal and Heard, as well as other unspecified John and Jane Doe Defendants "subjected him to prolonged housing under inhumane conditions – depriving him of ready access to potable water to drink and to wash with, while denying him a habitable living space." (Compl. at 4-5.) Depriving an inmate of drinking water can state a plausible claim. *See Gibson v. Crouch*, No. 20-2021, 2022 WL 7352267, at *2-3 (3d Cir. Oct. 13, 2022) (*per curiam*); *see also Wolfe v. Christie*, No. 10-2083, 2013 WL 3223625, at *5 (D.N.J. June 25, 2013) ("[T]here is no doubt that potable water constitutes a basic human need."); *but compare Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 220, 228-29 (3d Cir. 2015) (holding that a complete lack of potable water for three days "other than the water in a toilet bowl . . . poses a clear substantial risk of serious harm to an inmate" and that inmate who did not have water in her cell and who was told to drink from the toilet bowl when she requested water stated a claim (quotations omitted)) *with Collier v. Adams*, 602 F. App'x 850, 853 (3d Cir. 2015) (*per curiam*) (holding that the deprivation of running water in cell for 77 hours was not sufficiently serious where plaintiff had access to "fluids such as milk each morning, and he never asked staff for water or fluids" and was constantly monitored); *see also Alpheaus v. Camden Cnty. Corr. Facility*, No. 17-0180, 2017 WL 2363001, at *14 (D.N.J. May 31, 2017) (concluding that plaintiff failed to state a claim based on his non-specific allegation of "no running water"); *Gardner v. Lanigan*, No. 137064, 2018 WL 4144689, at *4 (D.N.J. Aug. 30, 2018) ("While

denial of access to drinking water can be an Eighth Amendment violation, here, it is not clear whether Plaintiff had access to alternative sources of water, nor how long water was denied to him.") (citation omitted).

With respect to C.O. Heard specifically, Harden alleges that he informed her that his sink was inoperable and asked to be relocated to another cell. (Compl. at 3.) He further asserts that C.O. Heard refused to allow him out of his cell to use the water fountain and refused to have someone else retrieve a drink of water for him. (*Id.*) His allegations suggest that C.O. Heard was on duty for a twelve-hour shift during the more than twenty-fours hours that he went without access to water and that he asked for her assistance more than once while she was on duty. At this early stage of the litigation, and accepting his allegations as true, Harden has alleged sufficient facts in support of his conditions-of-confinement claim against C.O. Heard to proceed at this time.

With respect to C.O. Neal, however, Harden's allegations suggest that C.O. Neal was on duty for only one hour when Harden first alerted her that he had an inoperable sink, and that during that time, she said she would request a plumber but forgot to do so and refused to move Harden to another cell. (*See* Compl. at 3.) These allegations against C.O. Neal do not plausibly support an inference that C.O. Neal consciously disregarded a serious risk to Harden's health or safety. *See Farmer*, 511 U.S. at 837; *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) ("[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."). Accordingly, Harden's claim against C.O. Neal based on the conditions of his confinement will be dismissed.

To the extent that Harden seeks to present a conditions-of-confinement claim against any other Defendant, Harden does not provide sufficient factual allegations regarding the behavior of

any other individual. In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Harden has, at times, collectively referred to "guards" or "medical staff" without specifying what each individual did or did not do that violated his rights. Pleading in such a manner is insufficient to put a defendant on notice of the conduct with which he is charged and does not state a plausible claim. *Id*. While Harden may name individuals for whom he does not have any identifying information and may refer to those individuals as John Doe #1 or John Doe #2, *etc.*, he must describe their alleged individual behaviors. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.") (quoting *Iqbal*, 556 U.S. at 677).[7] Therefore, the Complaint does not support a plausible Fourteenth Amendment conditions-of-confinement claim under the *Iqbal* pleading standard with respect to any Defendant other than C.O. Heard.

---

[7] Harden also alleges that upon his discharge from the hospital and return to PICC, he was placed into the same cell "with its still inoperable sink." (Compl. at 4.) However, Harden provides no further details regarding this alleged deprivation.

**B.    Deliberate Indifference to Serious Medical Needs Claims**

When medical treatment is at issue, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference in this context is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Further, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) (*per curiam*) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

Harden's allegations concerning medical deliberate indifference do not meet the *Iqbal* pleading standard because his allegations are undeveloped.  Harden claims that Defendants Neal, Heard, Poole, and various John and Jane Doe corrections staff and medical personnel denied him access to adequate medical care post-injury, including proper pain management, a soft-food diet, and "dental/nasal repairs." (Compl. at 5.)  In support of this assertion, Harden alleges that when

he returned to PICC, he was "not given anything for his pain, except for basic analgesics" and was not given the soft-food diet. (*See id.* at 4.) He also contends that, "[d]espite his repeated, near constant entreaties to the guards and the medical staff" at PICC, he was denied medical care. (*See id.*) These generalized allegations do not sufficiently identify an individual or individuals alleged to have intentionally denied or delayed access to medical care, who intentionally interfered with prescribed treatment, or how the alleged deprivation occurred. Accordingly, any deliberate indifference to serious medical needs claims will be dismissed without prejudice to amendment in the event Harden can provide additional relevant details in support thereof.

### C.    First Amendment Retaliation Claim

Harden claims that C.O. Heard retaliated against him in violation of his First Amendment rights. (Compl. at 3.) To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). A prisoner's filing of a grievance or expressing an intent to file a grievance constitutes constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."

*Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Harden contends that C.O. Heard retaliated against him after Harden requested to be moved to another cell "apparently one time too many" by threatening to prolong his stay in the "inhumane housing situation and threatening to make him drink toilet water." (Compl. at 3, 5.) Harden asserts that such alleged threats were designed to chill his First Amendment right to petition the government for redress of grievances. (*Id.* at 5.) These allegations are conclusory and do not support a plausible First Amendment retaliation claim. While Harden named a Grievance Officer as a Defendant, he does not even allege that he engaged in protected activity. To pass statutory screening, a plaintiff must support his claims with plausible factual allegations and conclusory allegations will not suffice. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) Accordingly, the First Amendment retaliation claim will be dismissed.

### D.     Claims Against Grievance Officer Greene

Harden names C.O. Greene as a Defendant and identifies her as a "Grievance Officer." (Compl. at 1, 2.) The only allegation he presents against C.O. Greene is that she violated his constitutional rights by failing "to act on his reports of denial of medical care, retaliation, and other maltreatment, permitting the harms to continue." (*Id.* at 5.) Harden does not allege that he filed any grievances. To the extent Harden seeks to assert a stand-alone claim against C.O. Greene based on the grievance process, it will be dismissed because "prisoners do not have a

constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Furthermore, a prison official's involvement in the grievance process is not sufficient to allege liability under § 1983 for the events that gave rise to the grievance. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."). All claims based on the handling of grievances will be dismissed with prejudice.

**E.    Official Capacity Claims**

Harden indicates in the Complaint that he seeks to present claims against each Defendant, all of whom appear to be employees of the City of Philadelphia, in his or her individual and official capacities. (*See* Compl. at 1.) Claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

A municipality such as the City of Philadelphia is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (Local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts.") (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, to plead a § 1983 claim against a municipality, such as the City of Philadelphia, a plaintiff must allege that the municipality or contractor's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although

14

not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted). In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiff "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").[8]

To the extent Harden seeks damages from any Defendant in their official capacity, he has failed to allege facts that support *Monell* liability. Harden has not pled a municipal policy or custom that caused the alleged constitutional violations, or municipal failures amounting to deliberate indifference. Nor does he describe a pattern of constitutional violations or an obvious need for training or supervision that supports a plausible inference of a due process violation.

---

[8] A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* "Ordinarily, this requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations omitted). "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely result in the violation of constitutional rights — *i.e.*, to show that the need for more or different training was so obvious." *Id.* (internal quotations and alterations omitted).

Accordingly, the official capacity claims, as well as any claim against the City of Philadelphia, to the extent Harden intended to name the City as a Defendant, are not plausible.

**F.    Supervisory Liability Claims**

Harden seeks to assert liability against the Commissioner of the Philadelphia Prison System and the Warden of PICC by alleging that they knowingly operated a decrepit prison and inhumane conditions were foreseeable and predictable. (Compl. at 5.)  To the extent Harden seeks to bring claims against these Defendants for holding supervisory positions, he has not alleged plausible claims.  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in that violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'") (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

"Suits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated

in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

Harden has failed to allege that Commissioner of the Philadelphia Prison System or the Warden of PICC established and maintained a policy, practice, or custom with deliberate indifference that caused constitutional harm, and he has failed to allege these Defendants' personal involvement in any alleged underlying constitutional violation. Accordingly, the individual capacity claims against these Defendants are not plausible.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Harden leave to proceed *in forma pauperis*. As set forth more fully above, any claim based on the handling of grievances will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court is prepared to serve Harden's condition-of-confinement claim concerning the denial of drinking water against C.O. Heard. However, all other claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Considering Harden's *pro se* status, he will be granted the option of filing an amended complaint to attempt to cure the defects identified by the Court.[9] In the alternative, Harden may advise the Court that he seeks to proceed only on

---

[9] If Harden chooses to file an amended complaint, the amended complaint must be a complete document that does not rely on the initial Complaint or other papers filed in this case to state a claim. Although Federal Rule of Civil Procedure 15 contemplates amended pleadings,

the conditions-of-confinement claim against C.O. Heard, and the Court will direct service of the original Complaint against C.O. Heard only.

An appropriate Order regarding amendment follows.

BY THE COURT:

GAIL A. WEILHEIMER, J.

---

"an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* While the Court must liberally construe *pro se* pleadings, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019). This means that the submission of an amended complaint "effectively constitutes an abandonment of any prior complaints filed by a plaintiff." *Smith v. Price*, No. 11-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted*, No. 11-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012).