## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAJOR O. HARDEN,    :
 Plaintiff,      :
          :
v.         :  **CIVIL ACTION NO. 25-CV-4976**
          :
C.O. NEAL, *et al.*,    :
 Defendants.     :

### MEMORANDUM

WEILHEIMER, J.          NOVEMBER 17, 2025

Currently before the Court is the Amended Complaint filed by *pro se* Plaintiff Major O. Harden, an inmate incarcerated at SCI Smithfield, who alleges he was subjected to unconstitutional conditions of confinement while detained at the Philadelphia Industrial Corrections Center ("PICC"). For the following reasons, the Court will permit Harden to proceed on his conditions-of-confinement claims regarding the alleged denial of drinking water against Corrections Officers Neal and Heard. The balance of Harden's claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

Harden commenced this matter in August 2025,[2] and named as Defendants in the initial Complaint: Corrections Officers Neal, Heard, and Poole, identified as guards on the K-Unit;

---

[1] The Court adopts the sequential pagination assigned by the CM/ECF docketing system to all *pro se* submissions. In quoting from *pro se* submissions, the Court will correct spelling, grammar and punctuation errors where needed.

[2] It appears that Harden was a pretrial detainee during the events that are the subject of this litigation, although Harden suggests that he might be considered a convicted prisoner due to a state parole detainer. *See Commonwealth v. Harden*, MC-51-CR-0014882-2024 (MC Philadelphia); *Commonwealth v. Harden*, CP-51-CR-0000887-2025 (C.P. Philadelphia); *see also* ECF No. 8 ("Am. Compl.") at 9. While the Court may take judicial notice of facts reflected in publicly available state court records, *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260

Corrections Officer Greene, identified as the Grievance Officer at PICC; John Doe #1, identified as the Commissioner of the Philadelphia Prison System; Jane Doe #1, identified as the Warden of PICC; John Doe #2 and Jane Doe #2, identified as guards at PICC; and John Doe #3 and Jane Doe #3, identified as "a designated medical provider, i.e., doctor/nurse" at PICC. (Compl. at 2-3.) Each was sued in his or her individual and official capacity. (*Id.* at 1.)

Harden alleged as follows: At approximately 5:00 p.m. on August 30, 2024, he was assigned to a cell on K-Unit at PICC. (*Id.* at 2.) He discovered that the sink in the cell was not functioning because the spigot did not work and the basin was filled with "a foul-smelling, lurid-looking liquid." (*Id.*) He later learned that sewage had backed up into the sink. (*Id.* at 2-3.) Harden informed C.O. Neal about the inoperable sink and requested a move to another cell because he was concerned that he would be unable to get a drink or to wash his hands. (*Id.* at 3.) Harden contended that C.O. Neal was "indifferent to [his] entreaties" but indicated that she would request a plumber. (*Id.*) He "did not hold out any great hopes that a plumber would be soon to arrive, as it was after 5 p.m. on a Friday." (*Id.*) Harden followed up with C.O. Neal before she left for the night[3] but Neal "supposedly 'forgot' to call a plumber and continued to refuse to relocate him to another cell." (*Id.*)

According to Harden, the next shift of Corrections Officers arrived at 6:00 p.m. and he spoke with C.O. Heard to alert her to the problem, once again asking to be relocated to another

---

(3d Cir. 2006), it is unclear at this time from Pennsylvania's state court docketing system whether Harden was confined at PICC as a pretrial detainee or convicted prisoner. Accordingly, for purposes of this Memorandum, the Court will apply the standards applicable to pretrial detainees.

[3] Harden alleged that the Corrections Officers "were doing twelve (12) hour shifts at the time, from six to six." (Compl. at 3 n.1.) Thus, the Court understood Harden to allege that he first notified C.O. Neal about the problem with his sink at most one hour prior to the end of her shift.

cell. (*Id.*) He alleged that C.O. Heard also was indifferent to his plight and refused to allow him out of his cell to use the water fountain and refused to permit someone else to retrieve a drink of water for him. (*Id.*) Harden followed up with Heard and claimed that she threatened him by saying that "if he continued to complain about the cell, she would make sure he stayed in there until he got thirsty enough to drink from the toilet bowl." (*Id.*)

Harden alleged that he remained "locked-down in the cell without water for more than twenty-four (24) hours; during which time, he grew more and more thirsty. His mouth grew dry, he became nauseous and dizzy, his skin became clammy to the touch, and he developed a very bad headache." (*Id.*) He claimed that on Saturday evening, after he alerted "every guard on duty since becoming aware of the issue with the sink," he was allowed out of his cell and was able to get a drink of water from the water fountain on the unit. (*Id.* at 3-4.) However, Harden passed out, landed on his face, and shattered five front teeth, punctured and lacerated his lips, broke his nose, and suffered injuries to his head and neck. (*Id.* at 4.) Harden was taken by ambulance to the hospital where he was told that the fall was due to severe dehydration. (*Id.*)

Upon discharge from the hospital, Harden was prescribed a pain management protocol and a soft-food diet. (*Id.*) He asserted that, upon his return to PICC, he was placed in the same cell with the inoperable sink and was denied medical treatment. (*Id.*) Harden alleged that he was given only "basic analgesics" for his pain even though the severity of his injuries required more substantial medication, and he was not given the soft-food diet and, therefore, was unable to eat for more than a week. (*Id.*) He suffered pain and lost weight despite his "repeated, near constant entreaties to the guards and medical staff" for medical care. (*Id.*) Harden contended that he continues to suffer pain from his injuries. (*Id.*) Based on these allegations, Harden requested declaratory relief and monetary damages.

In an October 6, 2025 Memorandum and Order, the Court screened Harden's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). *Harden v. Neal*, No. 25-4976, 2025 WL 2845370 (E.D. Pa. Oct. 6, 2025). The Court concluded that Harden's condition-of-confinement claim concerning the denial of drinking water against C.O. Heard was pled plausibly and could proceed to service. *Id.* at *9. However, all other claims were dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. *Id.* In so doing, the Court addressed each of Harden's claims at length and advised him of the necessary elements for pleading plausible claims. *See id.* at *4-9.

As to the conditions-of-confinement claim based on a lack of drinking water, the Court explained the objective and subjective components of a Fourteenth Amendment due process violation and the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Id.* at *4. While Harden's allegations against C.O. Heard passed the *Iqbal* pleading standard, the allegations against C.O. Neal, and any other Defendant, did not. *Id.* at *5. Further, the Court explained to Harden that in a § 1983 action, the person involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Id.* (citing, *inter alia*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). After explaining the elements of a claim based on a deliberate indifference to serious medical needs, the Court advised Harden that his claims were inadequately pled because they were too generalized and did not sufficiently identify an individual or individuals alleged to have intentionally denied or delayed access to medical care, who intentionally interfered with prescribed treatment, or how the alleged deprivation occurred. *Id.* at *5-6. With regard to Harden's claim that C.O. Heard retaliated against him in violation of his First Amendment rights, the Court explained the

4

elements of a plausible claim and determined that Harden's Complaint failed to allege facts in support of his legal conclusion that he suffered retaliation. *Id.* at *6. Additionally, claims against Grievance Officer Greene based on the grievance process were dismissed because there is no constitutional right to the grievance process. *Id.* at *6-7.

Harden's official capacity claims and any claims against the City of Philadelphia also were dismissed because Harden failed to allege facts that support liability under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). *Id.* at *7-8. Further, the Court addressed Harden's attempt to bring claims against the Commissioner of the Philadelphia Prison System and the Warden of PICC based on his allegation that they knowingly operated a decrepit prison under inhumane conditions. *Id.* at *8. The Court explained that generalized allegations that supervisory defendants are in charge of a facility, as those presented by Harden, are insufficient to allege personal involvement in the violation, and that a plaintiff must instead allege, with particularity, that such defendant established and maintained a policy, practice, or custom with deliberate indifference that caused constitutional harm, or participated in violating the plaintiff's rights or had knowledge of and acquiesced in a subordinate's unconstitutional act. *Id.* Finally, the Court explained to Harden that to the extent he sought to allege that any defendant violated his First Amendment right to practice his religion or violated the Religious Land Use and Institutionalize Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA"), his allegations did not pass the *Iqbal* pleading standard because he did not allege any facts explaining how his alleged inability to undergo ablutions before prayer or offering his prayers "in close proximity to human waste and other filth" violated his rights. *Id.* at *3 n.6. The Court also concluded that Harden had not sufficiently alleged the personal involvement of any named Defendant in the alleged

First Amendment and RLUIPA violations and his assertion that he has been prevented from exercising his religion was wholly conclusory. *Id.*

After explaining these deficiencies at length, the Court granted Harden the option of filing an amended complaint to attempt to cure the identified defects, or in the alternative, proceeding only on the conditions-of-confinement claim against C.O. Heard. Harden was advised that if he filed an Amended Complaint, the amended complaint must be a complete document that does not rely on the initial Complaint or other papers filed in this case to state a claim. *Id.* at *9 n.10 (citing, *inter alia*, *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019)).

On November 10, 2025, Harden filed the Amended Complaint that is presently before the Court. In the Amended Complaint, Harden names as Defendants C.O. Neal, C.O. Heard, C.O. Poole, a Jane Doe employee of the Philadelphia Department of Prisons who held the rank of a designated medical provider, and a John Doe employee of the Philadelphia Department of Prisons who acted as the Warden of PICC. (Am. Compl. at 1-3.) He seeks to present his claims against Defendants in their individual and official capacities. (*Id.* at 1.)

Harden states that he was assigned to "11 cell on K-Unit" at PICC on August 30, 2024, at "approximately 1700 hours." (*Id.* at 3.) Harden discovered that the sink in his cell was not functioning because the spigot was not working and the basin was filled with a foul-smelling, lurid-looking liquid because sewage had backed up into it. (*Id.*) Harden informed C.O. Neal, the guard on the unit at the time, and requested that she call a plumber and relocate him to another cell. (*Id.* at 4.) He alleges that he explained that "he did not like the prospect of being confined without the ability to drink water, wash his hands, or be without a means of making ablution so that he could pray." (*Id.*) According to Harden, C.O. Neal said that she would request a plumber

but refused other accommodations. (*Id.*) Harden asserts that he did not "hold out much hope that a plumber would arrive soon as it was after 1700 hours on a Friday and officer Neal was to be relieved at 1800 hours." (*Id.*) He claims that he followed up with C.O. Neal before she left for the night and learned that she "forgot" to call the plumber. (*Id.*) When the next shift arrived, Harden spoke with C.O. Heard and informed her of the problem, again asking to be relocated to another cell. (*Id.*) Harden alleges that Heard was indifferent to his plight and refuse to allow him out of his cell to go to the water fountain "so that he could secure a sufficient amount of water for drinking and ablution" and would not let anyone else obtain water for him. (*Id.* at 4-5.) He further contends that Heard ignored him when he followed up with her, requesting to be moved to another cell. (*Id.* at 5.)

Harden states that C.O. Neal relieved C.O. Heard the following morning, August 31, at 6:00 a.m. (*Id.*) During her initial rounds, Harden again requested that C.O. Neal call a plumber but she did not do so. (*Id.*) Harden alleges that he "remained locked-down in the cell without water for more than (24) hours; durin[g] which time, he grew more and more thirsty. His mouth grew dry, he became nauseous and dizzy, his skin became clammy to the touch, and he developed a very bad headache." (*Id.*) "Later that evening," Harden was allowed out of his cell for recreation, went to the water fountain to drink, and attempted to shower. (*Id.*) While showering, Harden became dizzy and lightheaded. (*Id.*) He claims he could not control the temperature and the water was extremely hot. (*Id.* at 5-6.) Harden "passed out twice and landed face first on the concrete floor." (*Id.* at 6.) He broke six teeth and his lips were lacerated. (*Id.*) He also injured his head and neck and broke his nose. (*Id.*) Harden was taken to the hospital, given testing, and informed that he was "extremely dehydrated." (*Id.*) Harden avers that the

doctor who administered care to him "prescribed a pain management protocol and that he be given a soft food diet for at least two weeks."[4]  (*Id.*)

Harden was discharged from the hospital at approximately 4:00 a.m. on September 1, was returned to the same cell, and "was not given any further medical treatment." (*Id.* at 7.)  He asserts that he "continued to request all officers who worked K-Unit," including C.O. Poole, to call a plumber to fix the sink. (*Id.*)  According to Harden, the prison has plumbers on staff available twenty-four hours a day because he recalls them working on the unit late at night on another occasion. (*Id.*)

Harden claims that C.O. Poole worked on K-Unit on September 2, that he explained the entire situation to her, and she indicated that she would call a plumber, but no plumber arrived during her shift. (*Id.*)  He contends that "C.O. Heard . . . [began her shift] at 6:00 p.m." but ignored Harden's requests again. (*Id.*)  Harden further states that "[u]pon the return of Officer Neal after her days off from work," she went to Harden's cell to ask why he continued to ask others to call a plumber when she told him that she would. (*Id.* at 8.)  Harden alleges that he told C.O. Neal that "it had been a week and he could not make ablution nor his prayer confined to the cell under these conditions," and he did not want to become dehydrated again. (*Id.*)

Harden also contends that John Doe Warden was "aware of this issue being a constant occurrence" at PICC. (*Id.*)  Harden claims that the other cells on K-Unit had the same sink issue "at one time or [an]other" and plumbers were called to fix those sinks or the inmate was relocated to a different cell. (*Id.*)

_____

[4] Harden further states that the treating physician at the hospital took photos of Harden's teeth and contacted a "dentist associate" who indicated that Harden's front teeth "were fractured between level two and three which are the most severe." (Am. Compl. at 6.)  The dentist further opined that the teeth may need to be removed depending on the circulation of blood in the teeth and nerves. (*Id.* at 6-7.)

With regard to his inadequate medical care claim, Harden alleges that he was not given anything for his pain except for basic analgesics, such as Tylenol, even though the severity of his injuries "called for much more than this." (*Id.*) He also alleges that he was not given the soft-food diet that he was prescribed in the hospital and, therefore, was unable to eat for more than a week, after which time he was able to eat sparingly, with great pain. (*Id.*) As a result, he lost weight and became depressed. (*Id.*) Harden avers that "[d]espite his repeated, near constant entreaties to the guards and medical staff" at PICC, he was denied the medical care he required for his post-injury recovery and general well-being, and continues to suffer from his injuries. (*Id.* at 9.) As relief, Harden seeks declaratory relief[5] and monetary damages. (*Id.* at 11.)

## II.    STANDARD OF REVIEW

Because Harden has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Amended Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will

___

[5] As previously explained to Harden, retrospective declaratory relief is not available. *See Harden*, 2025 WL 2845370 at *2 n.4. Declaratory judgments are unavailable to litigants who seek a proclamation that their rights were violated in the past, as Harden requests here. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). Accordingly, the Court addresses Harden's remaining claims for damages below.

accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

The Court construes the allegations in a *pro se* complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Based on the allegations in the Amended Complaint, Harden presents the following claims:  conditions of his confinement based on a lack of potable water to drink; deliberate indifference to serious medical needs; alleged violations of his right to practice

religion under the First Amendment and RLUIPA; and supervisory liability. (*See* Am. Compl. at 9-11.) The Court will address each of Harden's claims in turn below.[6]

### A.    Conditions-of-Confinement Claims

Harden asserts that the conditions of his confinement at PICC violated his constitutional rights because he was deprived of water for drinking and washing. Assuming that Harden was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his conditions-of-confinement claims. *See Hubbard v. Taylor*, 399 F.3d 150, 165-66 (3d Cir. 2005). Prison officials have a constitutional duty to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted). To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate

---

[6] Harden indicates in the caption of the Amended Complaint that he again seeks to present claims against each Defendant, all of whom appear to be employees of the City of Philadelphia, in his or her individual and official capacities. (*See* Am. Compl. at 1.) In the October 6, 2025 Memorandum, the Court explained to Harden the pleading standard for presenting official capacity claims, *see Harden*, 2025 WL 2845370 at *7-8, but he has made no attempt to satisfy this standard in the Amended Complaint. Thus, to the extent Harden seeks damages from any Defendant in their official capacity, he has failed to allege facts that support official capacity/*Monell* liability. Harden has not pled a municipal policy or custom that caused the alleged constitutional violations, or municipal failures amounting to deliberate indifference. Nor does he describe a pattern of constitutional violations or an obvious need for training or supervision that supports a plausible inference of a due process violation. Accordingly, the official capacity claims, as well as any claim against the City of Philadelphia, to the extent Harden intended to name the City as a Defendant, are not plausible and will be dismissed with prejudice.

governmental objective."). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted). To satisfy the subjective component of the analysis, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'" (quoting *Farmer*, 511 U.S. at 837)).

Harden claims that Defendants Neal, Heard, and Poole, as well as other unspecified John and Jane Doe Defendants "subjected him to prolonged housing under inhumane conditions – depriving him of ready access to potable water to drink and to wash with, while denying him a habitable living space." (Am. Compl. at 9-10.) Depriving an inmate of drinking water can state a plausible claim. *See Gibson v. Crouch*, No. 20-2021, 2022 WL 7352267, at *2-3 (3d Cir. Oct. 13, 2022) (*per curiam*); *see also Wolfe v. Christie*, No. 10-2083, 2013 WL 3223625, at *5 (D.N.J. June 25, 2013) ("[T]here is no doubt that potable water constitutes a basic human need."); *but compare Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 220, 228-29 (3d Cir. 2015) (holding that a complete lack of potable water for three days "other than the water in a toilet bowl . . . poses a clear substantial risk of serious harm to an inmate" and that inmate who did not have water in her cell and who was told to drink from the toilet bowl when she requested water stated a claim (quotations omitted)) *with Collier v. Adams*, 602 F. App'x 850, 853 (3d Cir.

2015) (*per curiam*) (holding that the deprivation of running water in cell for 77 hours was not sufficiently serious where plaintiff had access to "fluids such as milk each morning, and he never asked staff for water or fluids" and was constantly monitored); *see also Alpheaus v. Camden Cnty. Corr. Facility*, No. 17-0180, 2017 WL 2363001, at *14 (D.N.J. May 31, 2017) (concluding that plaintiff failed to state a claim based on his non-specific allegation of "no running water"); *Gardner v. Lanigan*, No. 137064, 2018 WL 4144689, at *4 (D.N.J. Aug. 30, 2018) ("While denial of access to drinking water can be an Eighth Amendment violation, here, it is not clear whether Plaintiff had access to alternative sources of water, nor how long water was denied to him." (citation omitted)).

At this early stage of the litigation, and accepting his allegations as true, Harden has alleged sufficient facts in support of his conditions-of-confinement claims against C.O. Neal and C.O. Heard to proceed at this time. However, he has not sufficiently alleged the personal involvement of any other Defendant with regard to a conditions-of-confinement claim.

Harden's allegations against C.O. Poole pertain only to the time period after he was treated at the hospital and returned to PICC. (*See* Am. Compl. at 7.) He alleges he was placed in the same cell on K-Unit and the sink remained inoperable. (*Id.*) He appears to allege that he asked C.O. Poole to request a plumber on September 1 and September 2, and that when he spoke with C.O. Poole on September 2, she said that she "would call the plumber but they did not arrive." (*Id.*) These allegations against C.O. Poole do not plausibly support an inference that C.O. Poole consciously disregarded a serious risk to Harden's health or safety. *See Farmer*, 511 U.S. at 837; *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) ("[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."). Notably, Harden does not allege that he was denied drinking water

upon his return from the hospital, only that the sink remained inoperable. (*See* Am. Compl. at 7-9.) Accordingly, Harden's claim against C.O. Poole based on the conditions of his confinement will be dismissed.

To the extent that Harden seeks to present a conditions-of-confinement claim against any other Defendant, he once again does not provide sufficient factual allegations regarding the behavior of any other individual. As this Court instructed Harden in the October 6 Memorandum, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Harden*, 2025 WL 2845370, at *5 (citing *Rode*, 845 F.2d 1195 at 1207). The Court also instructed Harden that referring to Defendants collectively, such as referring to "guards" or "medical staff," without specifying what each individual did or did not do that violated his rights, was insufficient to put a defendant on notice of the conduct with which he is charged and does not state a plausible claim. *Id.* Rather, while Harden was told he could name individuals for whom he did not have any identifying information and may refer to those individuals as John Doe #1 or John Doe #2, *etc.*, he had to describe their alleged individual actions that violated his rights. *Id.* (citing *Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207))). Because he has failed to do so, the Amended Complaint does not support a plausible Fourteenth Amendment conditions-of-

confinement claim under the *Iqbal* pleading standard with respect to any Defendant other than C.O. Neal and C.O. Heard.

**B.    Deliberate Indifference to Serious Medical Needs Claims**

When medical treatment is at issue, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference in this context is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Further, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) (*per curiam*) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

Harden claims that "[d]espite his repeated, near constant entreaties to the guards and medical staff" at PICC, he was denied the medical care he required. (Am. Compl. at 9.) According to Harden, he was given basic analgesics "even though such nerve pain and the

15

severity of his injuries called for much more than this."[7]  (*Id.* at 8.)  He also claims that he was

not given the soft-food diet and was unable to eat for more than a week, after which time he was

only able to eat sparingly, with great pain, resulting in weight-loss.  (*Id.*)  These generalized

allegations do not sufficiently identify an individual or individuals alleged to have intentionally

denied or delayed access to medical care, who intentionally interfered with prescribed treatment,

or how the alleged deprivation occurred.  In a § 1983 action, the personal involvement of each

defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff

must allege how each defendant was involved in the events and occurrences giving rise to the

claims.  *See Rode*, 845 F.2d 1207.  Pleading in such a generalized manner is insufficient to put a

defendant on notice of the conduct with which he is charged and does not state a plausible claim.

*Id.*

  Harden's allegation that the Jane Doe medical staff member denied him "access to

adequate medical care post-injury care in the form of proper pain management, the prescribed

'soft-food' diet, and dental/nasal repairs" (*see id.* at 10), also does not meet the *Iqbal* pleading

standard because it is too general and not supported by sufficient facts describing individual

actions.  Although Harden may refer to a specific defendant as a "Jane Doe" when he does not

have *identifying* information, he must describe the individual's actions and behaviors that

violated his rights.  Again, "[a]llegations of participation or actual knowledge and acquiescence .

. . must be made with appropriate particularity."  *Rode*, 845 F.2d at 1207; *see also Jutrowski v.*

*Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title

---

[7] It bears noting that preference alone for a stronger painkiller cannot establish deliberate indifference.  *See Rokita v. Klinefelter*, No. 24-2197, 2025 WL 3172767, at *2 (3d Cir. Nov. 13, 2025) (*per curiam*) (citing *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

notwithstanding, is only liable for his or her own misconduct." (quoting *Iqbal*, 556 U.S. at 677)).

Because Harden has failed to describe any individual and particularized behavior of the specific

Jane Doe defendant, any deliberate indifference to serious medical needs claims will be

dismissed with prejudice.

### C.    First Amendment and RLUIPA Claims

Harden alleges that "various corrections defendants – including Neal, Heard, Poole, etc."

violated his First Amendment right to practice his religion, as well as his rights under RLUIPA,

"when they hindered his ability to practice his religion and created a substantial burden to him."

(Am. Compl. at 10.)  As in the initial Complaint, Harden alleges that as a devout Muslim, he is

required to undergo ablution before prayer, is forbidden to offer his daily prayers without it, and

may not do so in the vicinity of human waste or blood.  (*Id.*)  He concludes that he was denied

his ability to pray and worship as a result of Defendants' actions.  (*Id.*)

The Court previously explained to Harden that, to the extent that he sought to present a

First Amendment free exercise or RLUIPA claim, he had failed to allege any facts in his initial

Complaint explaining how his alleged inability to undergo ablutions before prayer or offering his

prayers "in close proximity to human waste and other filth" violated his rights.  *Harden*, 2025

WL 2845370, at *3 n.6.  Harden has again failed to provide this type of factual context for his

conclusion.  He has failed to allege any facts explaining how his alleged inability to undergo

ablutions before prayer or offering his prayers in the vicinity of human waste or blood violated

his rights, such as why no alternate means to practice his faith was available, or that his exercise

of religion was substantially burdened.  *See, e.g.*, *DeHart v. Horn*, 227 F.3d 47, 53 (3d Cir. 2000)

(stating that, assuming as a predicate that the plaintiff inmate has demonstrated that a

constitutionally protected interest is at stake, the availability of other avenues for the exercise of

the asserted right is part of the balance courts must draw in assessing a First Amendment

violation) citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Ramirez v. Collier*, 595 U.S. 411, 425

(2022) (under RLUIPA, a plaintiff bears the burden of proving that the government policy

imposes a substantial burden on a religious belief).

Even if he had provided this type of factual predicate, Harden has also not sufficiently

alleged the personal involvement of any named Defendant in the alleged violations.  Thus, his

assertion that he has been prevented from exercising his religion is wholly conclusory.

"Although the plausibility standard does not impose a probability requirement, it does require a

pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*

*v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations

omitted).  "A complaint that pleads facts merely consistent with a defendant's liability stops

short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up);

*see also Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d

Cir. 1997) (the Court is not required "to accept as true unsupported conclusions and unwarranted

inferences.").  Accordingly, any claim based on Harden's inability to exercise his religion is

conclusory and will be dismissed with prejudice. *See, e.g., Peele v. Klemm*, 663 F. App'x 127,

130 (3d Cir. 2016) (*per curiam*) (upholding dismissal of First Amendment free exercise claim

where "Peele failed to provide any factual support for his First Amendment claims beyond

general conclusory allegations that DC–819 was inimical to his and possibly other inmates First

Amendment rights"); *see also Falcone v. Dickstein*, 92 F.4th 193, 202 (3d Cir. 2024) (in

determining whether a complaint states a claim, "we disregard unsupported conclusions or legal

conclusions couched as factual allegations"); *James v. City of Wilkes-Barre*, 700 F.3d 675, 679

(3d Cir. 2012) (in evaluating a motion to dismiss a court may "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements").

### D.    Supervisory Liability Claims

Harden seeks to assert liability against the Commissioner of the Philadelphia Department of Prisons and the Warden of PICC by alleging that they knowingly operated a prison that was so decrepit and in such a state of ill repair that inhumane conditions were foreseeable, predictable, and recurring, such that prisoners would "have to refuse to lock in their assigned cells to get the situation handled properly." (Am. Compl. at 10-11.) He claims that the Warden was aware of the plumbing problems at PICC because it was a "constant occurrence." (*Id.* at 8.) To the extent Harden seeks to assert supervisory liability against these Defendants, he again has not alleged plausible claims.

As Harden was previously advised, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in that violation. *Harden*, 2025 WL 2845370, at *8 (citing *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'") (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

"Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed*

*on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*  "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).  "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

Harden has failed to allege that the Commissioner of the Philadelphia Prison System or the Warden of PICC established and maintained a policy, practice, or custom with deliberate indifference that caused constitutional harm, and he has failed to allege these Defendants' personal involvement in any alleged underlying constitutional violation.  Accordingly, the individual capacity claims against these Defendants are not plausible and will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court will direct service of Harden's condition-of-confinement claims concerning the denial of drinking water against C.O. Neal and C.O Heard. However, all other claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Further leave to amend will not be given. *See*

*Nicholas v. SCI Smithfield*, No. 25-2187, 2025 WL 2807762, at *1 (3d Cir. Sept. 30, 2025) (A

"District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on

notice as to the deficiencies in his complaint, but chose not to resolve them." (quoting *Krantz v.*

*Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (*per curiam*))).

An appropriate Order regarding service of the Amended Complaint follows.

BY THE COURT:

GAIL A. WEILHEIMER, J.